# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Special Agent Timothy Kenny, being duly sworn, depose and state that:

## INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2014. For much of that time, I have been engaged in gang, firearm, and drug investigations. I am currently assigned to the FBI's Boston Office. Based on my training and experience as a Special Agent, I am familiar with federal firearm laws.

2. Since becoming a Special Agent with the FBI, I have participated in investigations involving illegal firearm possession and firearms trafficking. In the course of these investigations, I have conducted or participated in physical surveillance, the execution of search warrants, arrests, debriefings of subjects, witnesses, and informants, and participated in consensually recorded conversations and meetings. Based on my training and experience, I am aware that Title 18 U.S.C. § 922(g)(1) makes it a federal offense for an individual previously convicted of a crime punishable by imprisonment for a term exceeding one year to knowingly possess a firearm or ammunition that had been shipped or transported in interstate or foreign commerce.

3. I have written and/or participated in the execution of numerous search warrants resulting in the seizures of firearms and ammunition. I have participated in the debriefing of defendants, informants, and witnesses who had personal knowledge regarding illegal firearms possession and firearms trafficking. I have participated in all aspects of firearms investigations

including conducting surveillance, conducting controlled purchases of firearms, executing searches pursuant to court-ordered search warrants, and conducting arrests. As a result of my assignments, I have received extensive specialized training in the field of firearms identification, investigation, and enforcement.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that Kyvon ROSS, born 1998, has committed a violation of Title 18 U.S.C. § 922(g)(1) (the possession of a firearm and ammunition by a convicted felon).

5. The facts in this affidavit come from my personal observations, my training and experience, my review of records, and information obtained from other law enforcement. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not set forth all of my knowledge about this matter.

## **PROBABLE CAUSE**

6. On October 3, 2024, officers with the Boston Police Department ("BPD") were on patrol in the area of Washington Street and Columbia Road in Boston.

7. In the months leading up to October 2024, there were high levels of violence in this same general vicinity, to include:

    a. On August 30, 2024, in the vicinity of 48A Ellington Street, a person was fatally shot by an assailant on a bicycle (BPD Incident #I242073889);

    b. On July 17, 2024, in the vicinity of 17 Michigan Avenue, a person was shot by an assailant on a scooter (BPD Incident #I242057998);

    c. On July 10, 2024, in the vicinity of 10 Greenwood Street, five people were shot. Investigators are aware that an H-Block associate resides in the vicinity of 10 Greenwood Street. Two rival Heath Street gang members

2

were thereafter arrested in connection with the shooting (BPD Incident #I242056821);

d. On September 2, 2024, in the vicinity of 184 Washington Street, a person was fatally shot and a second person was non-fatally shot in the head and torso (BPD Incident #I242074601);

e. On September 3, 2024, in the vicinity of 95 Fowler Street, a person was arrested in possession of a firearm (BPD Incident #24207);

f. On September 5, 2024, in the vicinity of 24 Greenwood Avenue, there were shots fired by person(s) riding a scooter (BPD Incident #242075636).

8. A map plotting the approximate locations of the above incidents as well as the approximate location of ROSS's October 3, 2024 arrest (as discussed below) follows:



9. The BPD officers on patrol were aware of the recent trend of violence in this area. The BPD officers were also aware of a trend involving offenders using mopeds to commit

3

shootings or other violent crimes as doing so allows them to flee the scenes of such crimes quickly and without detection.

10.     At approximately 1:20 am on October 3, the BPD officers[1] were on patrol on Washington Street and observed a moped traveling at a high rate of speed on Washington Street in the direction of Erie Street. The officers observed a driver and a passenger on the moped, neither of whom was wearing a helmet. The officers also observed that the moped lacked any rear license plate.

11.     The officers observed the moped make a right turn onto Erie Street, then make a quick left turn down the wrong way on Greenwood Street, and then pull into a driveway. Officers followed and exited their vehicle. Officers then observed the moped accelerate at a high rate of speed directly at one of the officers who had exited the BPD vehicle, forcing the officer to move to avoid being hit by the moped.

12.     The driver of the moped – later identified as ROSS – soon thereafter lost control of the moped, and both the driver and passenger fell to the ground. One officer detained the passenger, and two other officers attempted to gain control of the driver (*i.e.*, ROSS). ROSS violently resisted, and one officer attempted to grab ahold of ROSS. That officer immediately felt the handle of a firearm protruding from ROSS's waist. ROSS continued to resist and attempted to remove the firearm from his waistband. One officer was able to remove the firearm from ROSS's waistband, and ROSS was ultimately placed into custody.

13.     During the course of the violent struggle with ROSS, multiple police officers sustained injuries. One officer was transported by Boston EMS to Beth Israel Hospital.

---

[1] Mentions in this affidavit of an observation made by "officers" are intended to refer to an observation made by one or more officers.

14. The firearm retrieved from ROSS's waistband was a Glock 22 loaded with 14 rounds of 40 caliber ammunition. One of these rounds was chambered, and the remainder were in the firearm's magazine. The serial number on the firearm was obliterated. After these were processed and placed into evidence, they were sent to the BPD Firearms Analysis Unit where it was successfully test fired and certified as a firearm. The one 40 caliber round that was test fired was certified to be ammunition.

15. Based on my training and experience in firearms, and my consultation with ATF agents, I believe that the Glock firearm identified above was manufactured and purchased outside of the Commonwealth of Massachusetts, and, thus, had to travel in interstate commerce to be possessed by ROSS in the Commonwealth of Massachusetts. An ATF agent with expertise in firearm origin further opined that Glock does not manufacture firearms in Massachusetts. Additionally, I have knowledge through consultation of ATF agents that no commercially available ammunition is manufactured within the Commonwealth of Massachusetts. Due to this fact, any ammunition possessed by ROSS would have traveled through interstate commerce to be possessed by ROSS in the Commonwealth of Massachusetts.

16. In 2017, ROSS resolved several felony charges – including two charges of larceny from a person and a charge of assault and battery – in Dorchester District Court via a Continuance Without a Finding ("CWOF"). In 2018, ROSS was found guilty of these offenses and sentenced to committed time.

17. In September 2020, ROSS pleaded guilty in U.S. District Court for the District of Massachusetts to being a felon in possession of a firearm and ammunition. In January 2021, ROSS was sentenced to 23 months in prison and three years of supervised release.[2]

18. Due to his prior convictions, ROSS is a felon, and is prohibited under federal law from possessing a firearm or ammunition.

19. Based on social media postings I have reviewed, and on my training and experience, I believe that in or around August 2024, ROSS appeared in a social media posting in possession of a firearm. Investigators monitoring social media postings by ROSS and his associates observed an Instagram post, posted on or about August 23, 2024 by an Instagram account known to me ("Account A").

20. The video showed a male dancing with the black handle of a firearm protruding from his waistband. During the video the face of the male is visible. The video also includes a caption, "Twinnnnnnn @ [Account B]" (that is, the user of Account A "tagged" Account B in the post).

21. Based on training, experience, and familiarity with ROSS and his associates and their appearances through physical surveillance and review of booking photographs, driver's license photographs, and social media photographs, investigators have identified the users of numerous social media accounts, including Accounts A and B. Based on that familiarity, investigators believe that Account A is a social media account utilized by an associate of ROSS and that Account B is a social media account utilized by ROSS.

---

[2] Case 1:19-cr-10349-ADB. In July 2022, ROSS's supervised release was revoked, and he was sentenced to time served followed by an additional 15 months of supervised release. Docket 96. In June 2024, ROSS's supervised release was again revoked, and he was sentenced to time served with no supervision to follow. Docket 113.

22. Investigators believe, based on training, experience, and review of the social media posting on Account A, including the inclusion of a reference to ROSS's account (*i.e.*, Account B), and by comparing the face of the male in the video to an October 3, 2024 booking photo of ROSS, that ROSS is the male in the video with the firearm in his waistband. Screen captures from the video (redacted) and that booking photo follow:



firearm handle in waistband

7




*Screen capture from posted video*        *ROSS's October 3rd booking photo*

23.     In addition, I have reviewed social media postings from Account B from around the timeframe of September 2024 that announce an intention by the user of the account – *i.e.*, ROSS – to "show" unnamed others, including one posting in which ROSS announces his objective to "show" unnamed others "why they cant FW us fr." I interpret this post to be threatening in nature – *i.e.*, an announcement that ROSS intends to take forceable action to demonstrate that the unnamed others cannot "fuck with" ROSS and his associates.

24.     Based on the foregoing facts, I believe that there is probable cause to believe that, on or about October 3, 2024, in Boston, Kyvon ROSS, knowing that he was previously convicted

8

in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, a firearm and ammunition, in violation of 18 U.S.C. § 922(g), and that there is sufficient basis for the requested criminal complaint and arrest warrant.

Attested to under the pains and penalties of perjury by telephone in accordance with Fed. R. Crim. P. 4.1 on November 21, 2024

_SA. Tim Kenny_ (by JDH)
Special Agent Timothy Kenny
Federal Bureau of Investigation

Signed electronically and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on this   21   day of November, 2024.

_Jessica Hedges_
HON. JESSICA D. HEDGES
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS